[Sac. No. 2330. In Bank.—August 28, 1917.]

## J. A. HANNAH, Respondent, v. D. J. CANTY et al., Appellants.

TRUST—ACTION TO ESTABLISH AND ENFORCE—FOLLOWING TRUST PROPERTY INTO HANDS OF GRANTEE WITH NOTICE—SUFFICIENCY OF EVIDENCE.—In this action to establish and enforce a trust and for an accounting, the evidence is examined and found sufficient to support the findings and a judgment that certain timber lands were acquired by one of the defendants without consideration from the other defendant, who was the owner of the legal title, and with knowledge of an unrecorded agreement whereby the plaintiff was to receive one-half the selling price of the lands for his services in finding, selecting, and examining them.

ID.—STATUTE OF LIMITATIONS.—The statute of limitations applicable to an action to establish a trust and for an accounting as merely incidental to the action is section 343 of the Code of Civil Procedure, and that section not having been pleaded, the trial court was justified in finding that the action was not barred.

ID.—FINDINGS—ULTIMATE FACT.—A finding that the legal title was held by the defendant in trust is a finding of an ultimate fact and not a conclusion of law.

ID.—ACTION NOT PREMATURE.—In such a case there is no merit in the argument that there can be no trust in the land but only in the proceeds after sale, and that no suit can be maintained until the sale of the land.

APPEAL from a judgment of the Superior Court of Tulare County, and from an order denying a motion to vacate the same. J. A. Allen, Judge.

The facts are stated in the opinion of the court.

Royle A. Carter, and William A. Barnhill, for Appellants.

Hannah & Miller, and Maurice E. Power, for Respondent.

MELVIN, J.—The purpose of this action was to declare a trust in certain lands in favor of plaintiff and incidentally that an accounting should be had between the parties to the action.   The nature of the litigation is discussed in the opinion of the district court of appeal in *Hannah* v. *Canty*, 1 Cal. App. 225, [81 Pac. 1035], given upon the sustaining of the order of the lower court denying a motion for change of place of trial.   At the trial plaintiff was successful, and defendants appeal from the judgment and from an order denying their motion to set aside and vacate said judgment.

The court found that in 1890 plaintiff and D. J. Canty entered into an agreement whereby Hannah undertook to find, examine, and select certain valuable timber lands and Canty promised to furnish the purchase price for such properties together with the necessary expenses of acquiring title to them; that there was also a mutual agreement that after deducting the purchase price, and amounts paid for expenses and for taxes on the land by Canty, together with interest at an agreed rate, the sums realized from the sales or issues of the property should be equally divided between the plaintiff and D. J. Canty; that in pursuance of this agreement Hannah bought certain valuable timber lands in Tulare County, D. J. Canty advancing the purchase price and necessary expenses; that title to this property was taken in the name of D. J. Canty; and that on January 2, 1892, D. J. Canty executed and delivered to plaintiff a certain instrument in writing which is set out in full in the findings.   By this writing Canty acknowledged and declared that J. A. Hannah was entitled to one-half of the selling price, rents, issues, and profits of 701.12 acres of land in Tulare County, which is particularly described, after first deducting from said selling price, rents, issues, profits, and proceeds, together with interest at twelve per cent per annum, certain enumerated sums advanced at given dates and all taxes on said lands paid by Canty, with interest at the same rate. This instrument, as the court found, was never acknowledged so as to entitle it to be recorded.   The writing, according

to the findings, truly described the land purchased under the original agreement and correctly specified the sums furnished by Canty thereunder. The court also found as follows:

"That afterwards the said D. J. Canty executed a deed purporting to convey said lands to his brother, J. M. Canty, and thereafter the said J. M. Canty, by said D. J. Canty as his attorney in fact, executed a deed purporting to convey said lands to the defendant, Laura A. Canty.

"That whatever interest, if any, was acquired by said J. M. Canty, and said Laura A. Canty, or either of them, under the said deeds or either of them, was acquired without valuable consideration, and with full notice and knowledge of the said rights of plaintiff in the said lands."

There were further findings to the effect that the lands are of the value of twenty-five thousand dollars; that D. J. Canty pretends that said lands belong to his wife, defendant Laura A. Canty; that on September 26, 1902, said Laura A. Canty for the first time denied and repudiated the trust as to said lands existing in favor of plaintiff; that plaintiff had offered to pay into court one-half of all sums found due upon an accounting for advances and taxes with interest, under the terms of the agreement with D. J. Canty, upon the execution of a sufficient conveyance of an undivided one-half interest in the lands; and that plaintiff's cause of action is not barred by the provisions of subdivision 2 of section 336, nor by section 337, nor by subdivisions 1 or 4 of section 338, nor by subdivision 1 of section 339 of the Code of Civil Procedure. There were very elaborate findings to the effect that neither J. M. Canty nor Laura A. Canty had paid any consideration for the property; that neither had ever been in possession of it; that the taxes were paid by D. J. Canty during all the time the land was nominally owned by his brother J. M. Canty or his wife; that J. M. Canty had expressly disclaimed ownership; and that Laura A. Canty had never known of a purported conveyance to her until informed of it by H. T. Miller on September 26, 1902. Other findings relate to and declare untrue certain matters of defense set up by D. J. and Laura A. Canty.

Appellants first attack those findings to the effect that neither J. M. Canty nor Laura A. Canty ever acquired any interest in the land as a *bona fide* purchaser, and that each had full notice and knowledge of the rights of plaintiff in the

said lands at the times of the purported conveyances to them respectively. These findings are attacked upon the ground that they are not supported by the evidence. While the testimony, as might be expected, was conflicting, we are of the opinion that these findings are amply supported.

There is no dispute regarding the fact that defendant executed a deed of the property to his brother and that this indenture was recorded about eight months after its purported execution; but plaintiff testified that after he learned of the recordation of the deed, he had a conversation with J. M. Canty in which the latter admitted that he had not bought the property. According to Mr. Hannah he said to J. M. Canty: "I see you have been buying some timber land." To this remark Mr. Canty replied, with a smile, "I have been buying nothing. Dan has played hell over there at Fresno, as usual, and had to put his property out of his hands. It stands as it always did and it is fixed just so Dan can do what he likes with it." On another occasion, as plaintiff testified, J. M. Canty said he had given D. J. Canty a power of attorney to do as he liked with the land; that he had not bought the property at all; but that D. J. Canty had simply put it in J. M. Canty's name to keep D. J. Canty's creditors from getting it. Plaintiff also stated under oath that many times prior to the date of the deed to J. M. Canty he had told the latter of his contract with D. J. Canty and their arrangements regarding the land. Before the time of the trial J. M. Canty had died. It is argued that plaintiff's statements regarding his conversations with a man long dead are entitled to small weight, but that giving them full value, they do not show *mala fides* on the part of J. M. Canty in taking the land. We do not indorse this view. If J. M. Canty made the statements attributed to him by plaintiff they showed his taking of the deed from his brother to have been a mere subterfuge. True it is that if the purported declarations of the grantee, given in evidence after his death, stood alone, they might be regarded as of slight probative force, but other facts given in evidence which were uncontradicted and unexplained by defendants tend to support Mr. Hannah's version of his conversation with J. M. Canty. The defendant, D. J. Canty, continued to pay the taxes on the land while it was standing of record in the name of his brother and was assessed to the latter. Such payments were made through

the agency of plaintiff at the request of D. J. Canty, who furnished the money. According to Hannah's testimony, J. M. Canty told him early in 1895, that a power of attorney had been given D. J. Canty so that he could do as he liked with the land. The power of attorney under which D. J. Canty subsequently executed a deed from J. M. Canty to Laura A. Canty was acknowledged in 1898. Respondent's argument is this: While defendant could not contradict any testimony regarding J. M. Canty's declaration with reference to the earlier power of attorney, because of J. M. Canty's death, he could have denied the truth of the statement alleged to have been made by J. M. Canty if it were not true. This he failed to do. Another circumstance tending to support plaintiff's testimony is that after the deed from D. J. to J. M. Canty was executed, the former asked Hannah to find a purchaser for the land. This request, as Hannah testified, was made by a letter which he lost before the trial of the case took place. D. J. Canty did not explain the letter nor deny having written it. We have, therefore, in support of the finding against the good faith of J. M. Canty's apparent acquisition of the property Hannah's account of J. M. Canty's disclaimer of any real interest therein; the payment of taxes by D. J. Canty; and the interest which D. J. Canty took in the sale of the land evidenced by his request that Hannah attempt to dispose of it. Added to this is the fact that D J. Canty himself offered in evidence a letter written to J. M. Canty but given to D. J. Canty by his brother, in which a third party made inquiries looking to the renting of the property. Respondent's counsel ask with much force why this letter was turned over to D. J. Canty if he had ceased to be the owner of the land.

Another circumstance which tends to support both findings is found in the gross inadequacy of D. J. Canty's own account of the transfers of the title to his brother and from the latter to Laura A. Canty by a deed executed by her husband as his brother's attorney in fact. D. J. Canty said that his indebtedness to his brother was the consideration for the first deed, and that J. M. Canty's indebtedness to Laura A. Canty was the consideration for the second transfer, yet the testimony utterly fails to show that in either case any credit was given on such indebtedness by reason of the transfer, or that it was in any degree reduced by reason of the delivery

of the deed.   D. J Canty, as a witness, stated that his brother
had given him a power of attorney so that he could sell or
trade the timber land and with the proceeds or as a result
of the trade get a home for his (D. J. Canty's) family.   Yet
D. J. Canty, as attorney in fact, deeded the property to his
wife, for an expressed consideration of $2,103.00 which, ac-
cording to his statement, was intended as a partial setoff for
a larger amount—between three thousand dollars and four
thousand dollars, owed Mrs. Canty by her brother-in-law.
There is not one word of testimony to show that J. M. Canty
knew of this transaction or authorized it, but there is evi-
dence which tends to contradict D. J. Canty and to prove
that Mrs. Canty knew nothing about the purported transfer
of the property to her until long after it was made.   Mr.
H. T. Miller testified that in 1902 he went to see Mrs. Canty
for the purpose of asking her to sign a certain document
in acknowledgment of Mr. Hannah's interest in those lands,
which in the interview were spoken of as "timber lands up on
Tule River."   She said: "Why, I don't own any timber
lands on Tule River."   However, she refused to sign the docu-
ment, disclaiming any interest in the property.   Mrs. Canty
did not appear as a witness at the trial and Mr. Miller's tes-
timony stands uncontradicted.   The entire transaction was
such that the court was fully justified under the evidence in
making the two findings negativing the good faith of J. M.
Canty and Laura A. Canty in the apparent acquisition of
title to this land by them.

Appellants also object to the finding that Laura A. Canty
first repudiated the trust on September 26, 1902.   The tes-
timony of Mr. Miller fixes that time as the date of her refusal
to sign an acknowledgment of Hannah's interest.   This was
ample support for the finding.

This was an action "to be regarded as having for its sole
object to establish a trust in the lands, and the accounting
asked for, as merely incidental to the action" (*Hannah* v.
*Canty*, 1 Cal. App. 227, [81 Pac. 1035]).   Therefore, the
only statute of limitations applicable to actions of this char-
acter is section 343 of the Code of Civil Procedure.   This
section was not pleaded.   Therefore, the court was justified
in finding that the cause of action was not barred.

The court found also that neither J. M. Canty nor Laura
A. Canty was ever in actual possession and occupation of the

land in controversy. This was properly responsive to the
plea of adverse possession made by defendants but not sup-
ported by any offer of proof.

Another finding to which defendants object is one to the
effect that plaintiff and D. J. Canty never agreed that the
latter might sell the land at his option for such price or to
such person as he might desire. This was in negation of
certain of the allegations contained in the pleadings of the
defendants. It is supported by the testimony appearing in
the record.

The finding that the legal title to the land is held by de-
fendants in trust is criticised as being in reality a conclusion
of law. Even if this were conceded, we do not see that de-
fendants or either of them would thereby suffer any harm.
The finding, however, was one of ultimate fact. In various
forms the contention is made that no suit may be maintained
until the sale of the land by Canty, if indeed it be held in
trust by defendants. In other words, it is argued that in
any view of the case there can be no trust in the land itself
in favor of plaintiff but only in the proceeds after the sale.
This argument is completely answered by the opinions in the
cases of *Green* v. *Brooks,* 81 Cal. 328, [22 Pac. 849], (cited
with approval by the district court of appeal on the former
appeal in this case), and *Donohoe* v. *Rogers,* 168 Cal. 700–
703, [144 Pac. 958].

Other findings are attacked in the brief of appellants, but
all of the material matters urged in that behalf have been
treated in the foregoing discussion.

Objection was made to the introduction in evidence of a
document prepared for the signature of Mrs. Canty. This
was the writing which she refused to sign, reference to which
has been made heretofore in this opinion. The bases of the
objections were that the writing was not binding upon de-
fendants; that its introduction was an attempt to establish
a trust by a document in the preparation of which defendants
had no hand; and that it was a self-serving declaration of the
plaintiff. This writing was offered at the court's suggestion
as a part of the testimony of Mr. Miller. Its contents, of
course, could not bind Mrs. Canty. It was merely a part of
the declaration to her by Mr. Miller which elicited the reply
that she had no knowledge of any deed executed by her hus-
band as his brother's attorney in fact purporting to vest title

to the timber lands in her. As a part of the conversation it was admissible. It merely showed, in connection with the rest of Mr. Miller's testimony, the nature of the demand made upon Mrs. Canty.

Defendants sought to introduce a quitclaim deed from J. M. Canty to Laura A. Canty for the declared purpose of showing a confirmation of the earlier deed purporting to have been made by him through his attorney in fact. The court admitted the instrument in evidence, but excluded numerous declarations in the deed regarding the source of the money with which the land was originally purchased, the alleged indebtedness of J. M. Canty to his sister-in-law, and other things which defendants vainly endeavored to prove to the court's satisfaction in the trial of the case. The ruling excluding these declarations is assigned as error. The deed containing these recitals was dated and acknowledged April 4, 1903, nearly six months after the commencement of this action. They were not admissible as declarations against interest or otherwise. J. M. Canty admittedly had no interest in the property when they were made. The statements sought to be introduced were not against but in favor of the title of his successors. Moreover, they were not the best evidence of the purported facts recited by them, and they amounted, at best, to unsworn declarations of one not a witness. Such recitals were very properly excluded.

No other alleged errors merit analysis, discussion, or comment.

The judgment and order are affirmed.

Henshaw, J., Shaw, J., Sloss, J., and Angellotti, C. J., concurred.